TOMPKINS PROPERTIES, INC., et al., Appellants, *v.* ANTHONY J. LUNEDI et al., Respondents.

First Department, April 21, 1953.

*Eugene Frederick Roth* of counsel (*Barrett G. Kreisberg* with him on the brief; *Charles F. Preusse,* attorney), for appellants.

*Milton A. Teplin* of counsel (*Teplin & Shulman,* attorneys), for respondents.

CALLAHAN, J.   Each of the corporate plaintiffs owned a tenement house in the city of New York.   The individual plaintiff, Louis H. Ravner, a man over seventy years of age, was the sole stockholder of the corporations.

On December 31, 1951, the corporate plaintiffs through Ravner executed deeds conveying the respective properties to defendant Josephine Lunedi, the wife of the codefendant Anthony Lunedi. The deeds were prepared by a lawyer engaged by the defendants, who was directed to act hurriedly despite his protests for the necessity to search the title, and who was not advised of the true considerations for the transfers.   It was necessary for the lawyer to estimate the equity of the grantors in the property in order to determine the amount of revenue stamps to be affixed to the deeds.

In March, 1952, this action was commenced to set aside the transfers on the ground that they had been made under an agreement to convey the property solely for the purpose of aiding the defendants to negotiate a loan in connection with a building venture, in which the parties were to have a joint interest.   If no such loan was negotiated, the properties were to be reconveyed.   The gist of the first two causes of action alleged in the complaint is that no loan was consummated, and that demand for reconveyance was refused.

The complaint also pleads a third cause of action for cancellation of four certain promissory notes totaling $20,000 payable to defendant Anthony Lunedi.   It is alleged that the notes were executed by plaintiff Tompkins Properties Corporation.   It appears, however, that the notes were in fact executed by the coplaintiff 310 West 25th Street Corporation.   The plaintiffs claim that the notes were delivered under an agreement similar to the understanding with respect to the real property, viz., to aid the defendants in borrowing money for the building venture, and that they were not so used.   The complaint demands an injunction against transfer of the notes.

The complaint further alleges a fourth cause of action on behalf of Ravner for money loaned to defendant Anthony Lunedi in the sum of $5,360.

The defendants' answer is a general denial and sets forth a counterclaim for $2,500 on one of the notes aforesaid.

The issues thus raised by the pleadings were tried before the court without a jury. The trial court dismissed the complaint and counterclaim for failure of proof.

The Trial Judge considered that neither party had told the whole truth. He said, in substance, that he could not accept Ravner's story as to the circumstances under which he allegedly delivered the deeds and notes, or believe that there was an understanding for return of the real property, if, and when, the notes were negotiated. The Trial Judge also stated that he was not satisfied with the proof as to the fourth cause of action for money loaned. He also completely disbelieved the defendants' story as to the alleged considerations for the deeds and the notes, and referred to the case as amazing. He criticized the defendants' story of their alleged advances of money to plaintiffs as incredible and contrary to the probabilities.

While we thoroughly agree with the Trial Judge in his appraisal of the whole case and his determination that the defendants' story is incredible, we do not agree, however, that the case should be decided entirely in reliance on the rule with respect to burden of proof.

It seems to us that as the trial court determined that the defendants' testimony with respect to the consideration for the $2,500 note was wholly unworthy of belief, for which reason it dismissed the counterclaim, it is inconsistent to deny judgment on the third cause of action for cancellation of the remaining three notes, all of which would suffer from the same infirmities. Incidentally, we point out that the defendants took no appeal from the dismissal of the counterclaim.

The trial court indicated difficulty in crediting the plaintiffs' story as to the circumstances under which the notes were given in relation to the alleged promise to return the real estate. We do not see why this doubt alone should have warranted dismissal of the first two causes of action for reconveyance of the real property. The notes, concededly, were not issued, or even discussed, until after transfer of the property was completed. Any statement allegedly made at the time the notes were issued could not have been part of any earlier agreement relating to the reason for conveying the property.

The plaintiffs should not be denied judgment on mere suspicion. If the defendants did not advance any consideration for the transfers, as the court found, the plaintiffs would seem to be entitled to a reconveyance of the real property, unless there was evidence that the plaintiffs did not come into court with clean hands.

The defendants' testimony as to the circumstances of the real estate transfers and the issuance of the notes was that they met the elderly Ravner in a lawyer's office and became friendly with him; and that commencing in 1950 he began to borrow money from them for a business venture involving the purchase of steel. Anthony Lunedi claims to have given him $3,500 in April, 1950, taking the sum in currency from a closet in the defendants' apartment. Lunedi says that he received a note for said amount. A month or so later the defendants assert that they gave $4,500 more, and shortly thereafter an additional $5,000, and again in June, 1950, an additional $7,000, all sums being in cash taken from the closet aforesaid. In each instance it is claimed that notes were given for the amounts advanced. Defendants attempted to explain the large amount of cash on hand by stating that they were accustomed to cash all checks received for contract work being performed by Anthony Lunedi, although they did have bank accounts.

None of this money had been returned up to August 27, 1951, although the loans were for shorter periods. On that day Ravner gave his check for $25,000 to the defendants. The defendants say that this represented the $20,000 previously borrowed, plus a bonus of $5,000. The notes not involved in this action were alleged to have been returned when the check was received. This seems a strange and pointless transaction where it is admitted that the check was not to be presented until Ravner had funds to meet it.

Ravner's story was that he had never borrowed any money from the defendants. In fact, he had been lending them money to meet payrolls. He said that this check was given at the defendants' request in order to bolster a financial statement that Anthony Lunedi was about to make in connection with an application for a loan.

Anthony Lunedi, under date of September 6, 1951, did make an application to an insurance company for a loan, and in a financial statement he did say that he had $25,000 in cash or in banks. Lunedi denied that this item in the financial statement related to the $25,000 check. Admittedly, he did not have $25,000 in any bank, but claimed that he had $25,000 more in cash in his closet. The financial statement was clearly untrue in other respects. It made no mention of several important items, including the fact that Lunedi had unpaid judgments against him.

The fact that the $25,000 check was not given in repayment of previous loans finds support in the testimony of a disinterested witness, a lawyer, who warned the parties that it was dangerous for Ravner to give such a check, when he had no money in the bank to cover the same, and that Lunedi offered to return the check, if Ravner did not trust him. Ravner, however, protested his faith in Lunedi and permitted him to retain the check.

It was the defendants' claim that the consideration for the transfer of the real estate was the forgiveness of the $25,000 debt represented by the check. If so, there was no apparent reason for the haste in drawing the deeds, and no reason why the lawyer should not have been advised of the consideration. In fact, it appears that the check was not returned to Ravner upon execution of the deeds, but continued to remain in Lunedi's possession. Further, Ravner was permitted to continue with the collection of rents, until he brought this suit.

The defendants' story of the considerations for the notes involved in this action is even more fantastic than that in respect to the transfer of the real estate. These notes were given in February, 1952. At that time the defendants, according to their own account, were aware that they had been unable to collect the alleged prior loans, and had been forced to take the real estate in lieu of payment. They say, nevertheless, that about a month after delivery of the deeds they gave Ravner several sums of money totaling $12,500. This was also cash taken from the closet. Before this sum was advanced, however, the defendants state that Ravner had taken them to see a house in Brooklyn, which he claimed that he owned, and they loaned this money on the security of the ownership of this property. This claim, however, is refuted by the fact that the notes of 310 West 25th Street Corp., indorsed by Ravner, were taken by the defendants although that corporation had divested itself of its Manhattan property a month earlier, and there is no claim that it had title to the Brooklyn property.

The notes in suit were given in the total sum of $20,000, which was $7,500 more than the moneys which the defendants claim to have loaned. It is not clear whether the excess was intended as a bonus or to carry out some plan to give Ravner the difference between the amount to be borrowed and the amount realized on the notes. Ravner's story was that the notes were given for the purpose of permitting the defendants to discount them. The fact that some plan was in the making to negotiate the notes was somewhat supported by testimony offered by an attorney, who testified for the defendants.

On the present record it is beyond belief that cash in the sum of $12,500, or any amount, was given in exchange for the notes. The defendants showed no source from which $32,500 in cash might be expected to be obtained, nor were they able to show that Ravner had deposited any large sums of money in his banks at the time of any of the alleged loans to him, although his bank accounts were placed in evidence. Further, the defendants lived in a small apartment for which they pay $37 a month rent. There were judgments against them, and supplementary proceedings were pending. Anthony Lunedi had borrowed money on his automobiles and trucks. A check had been returned for lack of funds, and he was in difficulty in connection with its issuance. Over a year had elapsed between the time of the alleged earlier advance of $20,000 cash and the time of the giving of the deeds, and no part of this sum had been repaid. It strains credulity to believe that the defendants would continue to loan large sums of money to Ravner on his mere statement that he owned a house, which he pointed out to them, after they knew his inability to pay the earlier loans, and that they would take a note from one of Ravner's corporations, which had no interest in this parcel of property.

There was some effort to discredit Ravner's story as to the circumstances surrounding the transfer of the real property by cross-examination of Ravner to show that he had involved himself with others in a scheme connected with the marketing of stolen bonds, and that he had borrowed money from banks on the security of bonds, which turned out to be stolen. If the fact is that Ravner conveyed the property to the defendants for any reason connected with the marketing of these bonds, or to defeat the claims of creditors arising out of this misadventure, it might well be that a court would deny him equitable relief. The subject might be more thoroughly investigated. But defendants do not contend that the transfers were designed to affect the claims of creditors. Their story is that the transfer of the real estate and the issuance of the notes were based upon other and legitimate considerations. We do not think that the plaintiffs should be denied relief merely on suspicion of misconduct, or without proof upon which a finding of fact could be made in support of a conclusion that the plaintiffs were in equity with unclean hands.

As to the fourth cause of action, we note that it is one at law for money loaned. Equitable considerations would not affect Ravner's right to recover on this claim, though, of course, he would be required to establish the same by a fair preponderance

of the evidence. He testified to numerous loans to the defendants, some of which he attempted to support by checks to defendants' order. Other loans he attempted to support by checks to " cash " bearing notations of alleged lists of bills in various denominations, which, he said, were given to the defendants to aid them in meeting their payrolls. The defendants said that the checks to their order were given on occasions when they cashed checks for Ravner. They denied receiving any part of the checks drawn to " cash ". There does not appear to be any explanation of the notations as to denominations of bills, which are found on the latter checks. Ravner had no apparent reason to draw large sums of money in this manner. In fact, there was one check drawn to the order of a contractor, who was concededly employed by the defendants. Ravner said that he gave this check at the defendants' request to meet a payment due, for which defendants were being pressed. The defendants told the strange story that Ravner was present when they were about to pay the contractor in cash, but Ravner suggested issuing his check instead, so that the defendants would have a record of the payment. Of course, the defendants could have given their own check, if they desired a record of the payment.

We feel that this case presents a challenge to the administration of justice, and that the challenge should be firmly met. Litigants should not be permitted to present to a court such conflicting statements as we find here without having the court do something about prosecution for false swearing. There may be occasions where the recollections or impressions of witnesses will vary, and their testimony present some conflict. Here, however, there can be no excuse based on faulty recollection of varying impressions. Some witness or witnesses are falsifying deliberately. The case should be retried, and appropriate action taken at its conclusion.

The judgment, insofar as appealed from, should be reversed and a new trial ordered, with costs to the appellants to abide the event.

Peck, P. J., Dore and Breitel, JJ., concur.

Judgment, so far as appealed from, unanimously reversed and a new trial ordered, with costs to the appellants to abide the event. [See 282 App. Div. 684.]